THOMAS F. McCRAN, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, INFORMANT, v. ANDREW GAUL, JR., DEFENDANT.

Argued December 9 and 10, 1920—Decided December 27, 1920.

1. Section 2 of the Public Utility law (*Pamph. L.* 1911, *p.* 374) which provides that "the governor may remove any commissioner for neglect of duty, or misconduct in office," does not attempt to confer upon the governor judicial powers in contravention of article 3 of the constitution; nor does it attempt to confer upon the governor jurisdiction which by article 5, paragraph 11, article 6, sections 1 and 3 is vested solely in the court for the trial of impeachments; and such statute, as against such objections, is constitutional.

2. In a proceeding for the removal of a member of the board of public utility commissioners under section 2 of the Public Utility law (*Pamph. L.* 1911, *p.* 374), charges are sufficient which specify the particulars of the neglect of duty and misconduct in office complained of, with such reasonable detail and precision as to fully inform him of what derelictions of duty are urged against him.

3. In a proceeding for the removal of a member of the board of public utility commissioners under section 2 of the Public Utility law (*Pamph. L.* 1911, *p.* 374), no particular formality is essential so long as, upon the whole, the proceeding is substantially such as is provided for by the statute.

In *quo warranto.* On demurrer to information.

Before Justices TRENCHARD, MINTURN and BLACK.

For the informant, *Thomas F. McCran,* attorney-general.

For Jersey City, *John Milton, George L. Record* and *Marshall Van Winkle.*

For the defendant, *Lindabury, Depue & Faulks, Josiah Stryker* and *Richard V. Lindabury.*

The opinion of the court was delivered as follows:

This case arises on an information in the nature of a *quo warranto* filed by the attorney-general, to test the title of the defendant to the office of member of the board of public utility commissioners of the State of New Jersey.

The information sets forth that on May 1st, 1919, the defendant was duly appointed, commissioned and qualified a member of the board, for the term of six years, pursuant to the provisions of the Public Utility law (*Pamph. L.* 1911, *p.* 374), and the amendments thereof and supplements thereto; that on March 20th, 1920, the governor gave the defendant a copy of certain charges against him for alleged neglect of duty and misconduct in office filed with the governor by the city of Jersey City, and notified him that he would be afforded an opportunity to be heard upon such charges at a stated time and place; that such hearing was duly held, and after its conclusion the governor found the defendant guilty of neglect of duty and misconduct in office as a member of the board in his acts and failures to act as commissioner under the public utility statutes, in certain particulars stated. The information further alleges that the governor, by reason of such findings, removed the defendant from his office as a member of the board on October 13th, 1920, and charges that by reason of such removal his office became vacant, and yet he thereupon usurped and intruded into the same, and prays that the defendant may be adjudged to be an intruder into such office and be ousted therefrom.

A demurrer to this information was filed by the defendant. It challenges the proceedings before the governor and the order for removal upon the following grounds:

1. That the provisions of section 2 of the Public Utility act of 1911, upon which said proceedings and order were based, is unconstitutional and void, in that (a) it attempts to confer upon the governor judicial powers in contravention of article 3 of the constitution; and (b) in that it attempts to confer upon the governor jurisdiction which by article 5, paragraph 11, and article 6, sections 1 and 3 of the constitution is vested solely in the court for the trial of impeachments.

2. That the charges given to the defendant do not accuse him of neglect of duty or misconduct in office.

3. That the findings of fact do not show defendant to have been guilty of neglect of duty or misconduct in office, and are not included within the charges served upon the defendant.

We shall first consider the contention that the statutory delegation of power of removal to the governor was unconstitutional.

The defendant is not a constitutional officer. He was appointed commissioner, pursuant to the provisions of section 1 of the Public Utility law, which provides that members of the board of public utility commissioners shall be appointed by the governor with the advice and consent of the senate. Section 2 of the act provides that their term shall be six years, and that "the governor *may* remove any commissioner for neglect of duty *or* misconduct in office, giving to him a copy of the charges against him and an opportunity of being publicly heard in person or by counsel in his own defence upon not less than ten days' notice."

At the outset we point out that this policy of conferring upon the governor the power of removal *for cause* of statutory state officers *appointed for a fixed term* is not a new one in this state; it did not originate in the Public Utility law of 1911, and whether constitutional or not, it had been exercised many years before, and frequently since.

Thus, in 1891, in creating the state department of banking and insurance, the legislature provided that the commissioner should be appointed by the governor with the advice and consent of the senate, and should hold his office for a *term of*

*three years,* "unless sooner removed by the governor *for cause." Pamph. L.* 1891, *p.* 17.

In 1908, Governor Fort, in his inaugural address, strongly recommended the enactment of a law empowering the chief executive to remove from office *any state official, appointed under a statute, who refuses or neglects to perform his duty.* In 1909, in his message to the legislature, he repeated that recommendation.

Accordingly, in 1911, the statute here in question was passed.

Later, in 1917, the legislature provided that the state architect should be appointed by the governor, with the advice and consent of the senate, and should hold his office for the *term of five years,* "unless sooner removed by the governor *for cause." Pamph. L.* 1917, *p.* 271.

Still later, in 1918, the legislature provided that the members of the state board of institutions and agencies should be appointed by the governor, subject to confirmation by the senate, for *a fixed term,* and should be "subject to removal by the governor at any time *for good and sufficient cause." Pamph. L.* 1918, *p.* 343.

This executive and legislative policy, so strongly urged and so long and frequently exercised, admonishes us not to be too confident that it is an unconstitutional delegation of power, particularly in view of the fact that the constitution itself directs that the governor "shall take care that the laws be faithfully executed." Article 5, paragraph 6.

The people in framing the constitution committed to the legislature the whole law-making power of the state which they did not expressly or impliedly withhold; and it is to be noted that the constitution does not expressly prohibit the legislature from providing how and by whom statutory officers may be removed. Indeed, in *Sweeney* v. *Stevens* (1884), 46 *N. J. L.* 344, it was said: "The legislature, in creating the office [of jailor], had the right to provide for its vacation in such manner as they saw fit."

The defendant contends, however, that this provision for removal attempts to confer upon the governor judicial powers

in contravention of article 3 of the constitution, which reads as follows: "The powers of the government shall be divided into three distinct departments—the legislative, executive and judicial; and no person or persons belonging to, or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided."

The defendant relies mainly upon the case of *Pritchard* v. *Police Commissioners* (1873), 36 *N. J. L.* 101. But that case is not in point. There the police commissioner had been convicted of crime in the Hudson Oyer and Terminer Court, and the governor had declared his office *forfeited* and had removed him from office without charges or a hearing, and *with no statutory authority for the action,* the power being claimed by the governor to inhere in his office as governor. The decision was that the power did not exist. But Chief Justice Beasley, in his opinion, was careful to point out that he was dealing with a case *where no power of removal had been conferred by statute.* He says: "How, then, can it be said that they [the police commissioners] are accountable to the governor with regard to their official conduct? By the statute in question the executive *is not given any supervision* over these officials; all the authority it confers upon him is to fill the office in case of vacancy. *It imparts to him no faculty to declare judicially that such vacancy has occurred.* and if such faculty exists. it must be as an inherent constituent of the executive office. I have not been able to perceive any intimation, not even the least, either in the constitution of this state, its system of laws or legal observance, that this right of superintendency over, or power of removal from public office, *except in instances of statutory specification,* has been delegated to the executive head of the government."

In view of the care thus taken by that skilled jurist and logician to limit the decision to cases where the power of removal was not conferred by statute, we are not permitted to regard it as authority in a case where, as here, there was such a "statutory specification." Indeed, we are rather justified

in inferring from. his opinion that the power of removal could be conferred upon the governor *by statute.*

As we have seen, the narrow question presented for solution under this point is, Can the legislature create a state office to be filled by the governor for a fixed term, and clothe the governor as its agent with power to remove him for neglect of duty or misconduct in office after due notice and. hearing, without offending against article 3 of our constitution?

That article of the constitution, thus drawn under review, has been considered frequently by our courts and its boundaries charted.

In *Paul* v. *Gloucester County* (1888), 50 *N. J. L.* 585, Mr. Justice Van Syckel, speaking for the Court of Errors and Appeals, said: "This constitutional clause relates only to those powers which, by the constitution itself, are assigned to, or which, in their nature, pertain to one of the three departments exclusively. * * * But there is a multitude of governmental duties which have never been and cannot possibly be performed, either by the legislature or by the governor, and which are certainly not prescribed by the constitution to the judiciary. * * * The conclusion is inevitable that this multitude of duties was regarded as lying outside of what were termed the powers *properly belonging* to the executive, legislative and judicial departments, and was left by the constitution to be discharged in such mode as the law should provide."

Again, in *Ross* v. *Freeholders of Essex* (1903), 69 *N. J. L.* 291, 294, it was said that "the force of this clause is not to confine the legislature to powers which are legislative, the governor to powers which are executive, and the courts to powers which are judicial, but merely to forbid each department to encroach upon the powers *properly belonging to* *another.* The powers properly belonging to each of these departments and, therefore, forbidden to the others, are those assigned under the general terms, legislative power, executive power and judicial power, and also those specifically delegated by the constitution to the senate and general assembly, or to

the governor, or to the courts." This was reaffirmed in *Hudspeth* v. *Swayze* (1913), 85 *Id.* 592.

Now, in view of the fact that the constitution vests the legislative power in the senate and general assembly, the executive power in the governor, and the judicial power in the courts, the question comes down to this: Is the power of removal in question a judicial power in the sense that it *properly belongs* to the courts and is forbidden to be conferred by the legislature upon the governor? We think it is not.

While in our state proceedings under statutes conferring *quasi*-judicial powers upon public boards and the like for the removal of officers entitled to a hearing are said in some of the cases to be "judicial in character," yet it has never been held to be an exclusive judicial function. Many administrative boards exercise "*quasi*-judicial functions." They investigate, deliberate and decide; and yet we have said that such "*quasi*-judicial" functions are not judicial powers in a constitutional sense. See *Erie Railroad Co.* v. *Board Public Utility Commissioners* (1915), 87 *N. J. L.* 438.

In *Ross* v. *Freeholders of Essex* (1903), 69 *N. J. L.* 291, it was held that the legislature had constitutional authority for conferring upon a justice of the Supreme Court the power of appointing park commissioners; so, too, in the Hudspeth case it had authority to clothe the Chancellor with power to appoint a citizen jury commissioner. In *Rippel* v. *Prudential Insurance Co.*, 85 *Id.* 395, it was held that the legislature had power to confer upon the Chancellor, as a legislative agent, authority to appoint appraisers to appraise the capital stock of life insurance companies; so, too, *In re Roebling*, 91 *N. J. Eq.* 72, it was held that the legislature can designate the Ordinary as an agent to pass upon the action of the state comptroller in assessing and levying tax upon the transfer of the estates of decedents.

It thus appearing that the legislature may confer upon the justices of the Supreme Court and the Chancellor powers of appointment and duties unconnected with their judicial functions, the question presses, Can the legislature in a

statute creating an office and conferring the appointing power upon the governor, provide therein that the governor may, in his capacity of enforcing the law, remove such officer for a designated cause and by a method of procedure judicial in form, without thus clothing the governor with judicial power forbidden by the constitution? We are bound to say that we think it can. Such a view is at least permissible, and our Court of Errors and Appeals has repeatedly held that an act of the legislature cannot be declared unconstitutional if it can be sustained upon a view of the constitution that is permissible for the legislature to take. *Hudspeth* v. *Swayze, supra; Attorney-General* v. *McGuinness,* 78 *N. J. L.* 346; *Attorney-General* v. *McKelvey, Id.* 621. Every intendment must be in favor of the legislative power. *Harris* v. *Vanderveer,* 21 *N. J. Eq.* 424.

We have several statutes authorizing the governor *in his discretion* to remove statutory officials appointed for *a fixed* term (*Pamph. L.* 1900, *p.* 176; *Pamph. L.* 1900, *p.* 481; *Pamph. L.* 1917, *p.* 35), and that power has been exercised without challenge so far as we are aware. It seems to be conceded that the legislature may create an office with *an indeterminate term* and clothe the governor with power of removal *at his discretion,* and we cannot see why, if that is so, the legislature may not create an office for a *fixed term* and attach thereto a condition that the governor *may* remove the incumbent upon ascertaining facts upon which the condition becomes effective, without violating the constitutional provision in question.

While the decisions in other jurisdictions are not harmonious (as the industry of counsel has shown), yet in many states having constitutional provisions like our own, the courts have held that a statute authorizing a removal by the governor for cause does not constitute an encroachment on the judiciary in contravention of the constitution. See *Donahue* v. *Will County,* 100 *Ill.* 94; *McMaster* v. *Herald,* 56 *Kan.* 231; *State* v. *Doherty,* 25 *La. Ann.* 119; *Fox* v. *McDonald,* 101 *Ala.* 51; *State* v. *Oleson,* 15 *Neb.* 247; *State* v. *Hawkins,* 44 *Ohio St.* 98; *Gilbert* v. *Salt Lake City Police*

*Commissioners,* 11 *Utah* 378; *Gray* v. *McLendon* (*Ga.*), 67 *S. E. Rep.* 859; *State* v. *Frazier* (*S. D.*), 167 *N. W. Rep.* 510.

But the defendant further contends that the power of removal in question is unconstitutional because it attempts to confer upon the governor jurisdiction which the constitution vests exclusively in the court for the trial of impeachments. We think not.

Article 5, paragraph 11, of the constitution, provides: "The governor and all other civil officers under this state shall be liable to impeachment for misdemeanor in office during their continuance in office and for two years thereafter." Article 6, section 1, provides that the judicial power shall be vested in certain named courts, among others, a court for the trial of impeachments, and section 3 provides that the house of assembly shall have the sole power of impeaching; that all impeachments shall be tried by the senate; and that no person shall be "convicted" without the concurrence of two-thirds of all the members of the senate.

It is quite obvious that the statute does not confer upon the governor the jurisdiction of the court of impeachments.

Under the constitution an officer may be impeached, not only during his continuance in office, but *"for two years thereafter,"* and therefore a power vastly different from that of mere removal is conferred. Other considerations will demonstrate that the removal of a commissioner pursuant to powers conferred by the Public Utility law is in no sense an impeachment. To remove by way of impeachment there must be "misdemeanor in office," an essential element of which is that there shall be an improper motive or purpose. This proceeding is highly penal in its nature, is one to which the pardoning power does not extend after "conviction" (Constitution, article 5, sections 9 and 10), and is governed by the rules of law applicable to criminal prosecutions (*State* v. *Hasty,* 184 *Ala.* 121; *Ann. Cas.* 1916, *B.* 703), and the judgment may extend "to disqualification to hold any office of honor, profit or trust under this State." (Article 6, section 3, paragraph 3.) On the contrary, removal by way of the Public Utility law requires only "neglect of duty *or* miscon-

duct in office," and neglect of duty may be inferred without any finding of improper motive or purpose. *State* v. *District Court*, 44 *Mont.* 318; *Ann. Cas.* 1913, *B*. 396; *Attorney General* v. *Jochim*, 99 *Mich.* 358; 23 *L. R. A.* 699; *Goe* v. *Hoffman*, 61 *Kan.* 265; *Lynch* v. *Chase*, 55 *Id.* 367; *State* v. *Wilcox*, 78 *Id.* 597; 19 *L. R. A.* (*N. S.*) 224. This proceeding is remedial in character (*State* v. *Medler*, 17 *N. M.* 644), and no penalty follows except that of removal. It is not governed by the rules applicable to criminal proceedings, due notice and a fair hearing being all that is required. *Ayers* v. *Newark*, 49 *N. J. L.* 170; *State* v. *Medler*, 17 *N. M.* 644; *Ann. Cas.* 1915, *B*. 1141.

It is true that in the Pritchard case the Chief Justice said that "the function to declare an office forfeited from malfeasance is obviously judicial in its character," and that it "is vested in the court for the trial of impeachments." But there the forfeiture was sought by reason of the officer having committed a *crime*, and the Chief Justice was careful to point out in this connection that there was no statute authorizing the forfeiture, and that "what malfeasance will work a forfeiture is no part of the *lex scripta;* there is no statute upon the subject."

The case at bar is far different from the Pritchard case. Here *the statute* authorized the removal for *neglect* of duty merely (not necessarily a crime) and not necessarily involving improper motive or purpose. We think that the extent of the decision in the Pritchard case upon this head is that in the absence of a statute or a constitutional provision for removal (additional to the impeachment provision) the only method of removal is that provided by the impeachment provision of the constitution. And it is to be noted in this connection that the Chief Justice rested his decision, in part, at least, upon the declaration that the determination of forfeiture "related to a right of property," and it is further to be noted that later, in *Stuhr* v. *Curran* (1882), 44 *N. J. L.* 181, 188, that doctrine was repudiated, or, at least, modified (Chief Justice Beasley dissenting), the Court of Errors and Appeals saying: "In this country they [offices] are not held

by grant or contract, nor has any individual a property or vested right in them beyond the constitutional tenure and compensation. They are mere agencies of a political nature, created by appointment or election for the discharge of public functions."

From these considerations we think that the governor was granted a different and broader power of removal than that by way of impeachment, and that it was not a grant of power conferred exclusively upon the court for the trial of impeachments.

The next contention is, "that the charges given to the defendant do not accuse him of neglect of duty or misconduct in office."

The argument in support of this point is thus stated in the defendant's brief: "The charges preferred under the statute are insufficient unless, assuming their truth, they show the defendant to have been individually and personally guilty of neglect of duty or misconduct in office within the meaning of section 2 of the Public Utility act. Failing this, the governor was without jurisdiction to make the order removing the defendant. * * * An examination of the charges [says the brief] discloses that none of them accuse the defendant personally. * * * They allege certain acts or neglect to act on the part of the board as a board."

We deem it a sufficient answer to this argument to say that it is mistaken in point of fact. The information shows that the defendant was given a notice addressed to him individually, signed by the governor, setting forth, among other things, that Jersey City had filed with him "certain charges *against you* for neglect of duty and misconduct in office *as a member of the board* of public utility commissioners," that a copy of the charges was given to the defendant, and that the charges requested the governor to remove the defendant for neglect of duty and misconduct in office in certain particulars stated. This, we think, fairly apprised the defendant that he was accused individually and personally of neglect of duty and misconduct in office as a member of the board. Moreover, the charges specified the particulars of the neglect of

duty and misconduct in office complained of, with such rea-
sonable detail and precision as to fully inform him of what
derelictions of duty were urged against him, and hence were
sufficient.

Finally, the defendant contends that "the findings of fact
do not show defendant to have been guilty of neglect of duty
or misconduct in office, and are not included within the
charges served."

We think this contention without substance. The governor
found the defendant guilty of neglect of duty and misconduct
in office in his acts and failures to act as commissioner in
several particulars set forth in his findings, and these find-
ings are fairly included within the charges served. In such
a proceeding no particular formality is essential, so long as,
upon the whole, it is substantially such as is provided for by
the statute. *Devault* v. *Mayor of Camden,* 48 *N. J. L.* 433;
*Ayers.* v. *Newark,* 49 *Id.* 170; *Cavanagh* v. *Police Commis-
sioners,* 59 *Id.* 412.

Of course, the question whether or not these findings of
neglect of duty and misconduct in office were justified by the
evidence, is a question not presented for our consideration in
a proceeding such as this; indeed, the evidence is not before
us. As has been assumed by counsel, our sole duty on this
phase of the case is to ascertain whether or not the charges,
or any of them, accuse of neglect of duty or misconduct in
office; and if they do (as we have found they do), to ascer-
tain whether or not such charges were found to be true by
the governor, and it is clear that he found that they were
true.

The demurrer must be overruled and a judgment of ouster
entered against the defendant, with costs.