HARRY S. REICHENSTEIN, PROSECUTOR, v. THE BOARD OF COMMISSIONERS OF THE CITY OF NEWARK ET AL., DEFENDANTS.

Argued May 6, 1942—Decided May 4, 1943.

Before Justices CASE and DONGES.

For the prosecutor, *John Drewen.*

For the defendants, *Raymond Schroeder* and *Thomas L. Parsonnet.*

The opinion of the court was delivered by

DONGES, J.    After the court announced its decision to allow a writ of *certiorari* in this case, counsel, with the consent of the court, stipulated that the case should be considered upon the record submitted on the application for the writ and that the court should consider the merits as if the writ had actually issued and return thereto had been made.    The case brings up the action of the Board of Commissioners of the City of Newark in dismissing prosecutor from his office of City Clerk after a hearing upon charges.    There was a lengthy trial and the record is large.

Prosecutor was found guilty upon twelve of thirteen charges, charge No. 12 having been withdrawn.    Some of the charges was closely related and are grouped together for the purposes of argument in the briefs.    We shall consider them as so presented.

Charge 1 was:

"That Harry S. Reichenstein, City Clerk of the City of Newark, did, on and before May 15th, 1941, contrary to the statutes in such case made and provided, cause the said City to incur liability for the payment of sums of money for purposes and in amounts not authorized by any appropriation included in any budget, temporary budget or emergency appropriation."

This charge grew out of the provisions made in the city clerk's budget for the municipal election for commissioners in May, 1941.    It appears that the budget provisions were more than $7,000 less than the amount actually expended for the election.    This was occasioned principally by two factors.    The first was that allowance was made for the compensation of the more than 1,000 election officers at the rate of $10 per day whereas they were paid $15 per day.    The other main item consisted of the expense attached to the voting by citizens absent in the armed service of the United States.

It appears by the testimony that when the budget was made up the prosecutor and his assistant adopted the figures of the budget for the year 1937 when the past previous munici-

pal election was held. In that year election officers were paid $10 per day, but after that election and before the 1941 election the Supreme Court filed an opinion, *Gross* v. *Essex County Board of Elections*, 120 *N. J. L.* 711; 198 *Atl. Rep.* 293, holding that election officers serving at a primary election were entitled to compensation at the rate of $15 per day. The significance of this decision and its effect on the municipal election was overlooked by the respondent and his staff. As to the expense of the soldier vote, the legislation which gave rise to this expense was adopted after the budget estimates were prepared and submitted to the city authorities.

In this situation the defendants contend that the failure to make proper budget requests constitutes such gross neglect of duty and lack of efficiency as to warrant dismissal from office. We think it does not. There could not be and it is not claimed that there was any improper motive on the part of the prosecutor in this regard. It was an honest mistake. It resulted in no loss or damage to the city. It did not interfere with the holding of a proper election. A supplemental appropriation was passed and all proper items of expense were paid. We think there is no sufficient cause for removal in the evidence adduced under this charge.

The second charge was:

"That said Harry S. Reichenstein did, on and before May 13th, 1941, use or authorize, direct or permit to be used, property or personnel of the City of Newark, to wit:

"(a) The office of the City Clerk.

"(b) Stationery of the City of Newark.

"(c) Supplies of the City of Newark.

"(d) Employees of the City of Newark, during their regular working hours."

As to the items of the use of stationery and supplies of the city, we think the evidence wholly fails to sustain the allegations. This second charge grows out of the use of a mimeograph machine, which was located in the city clerk's office, for purposes other than those of the office. During the time in question the city clerk's office was assigned to the Depart-

ment of Public Affairs. There was in that department a public relations bureau and the head of that bureau, at the direction of the Director of the Department of Public Affairs, had certain pamphlets prepared and mimeographed on this machine. The mimeographed matter had to do with the relations between the city government and the citizens and was not for the benefit of any private interests. It is clearly established that certain mimeographing alleged to have been done for a private business of the prosecutor was not done at the city clerk's office but was done at the home of one of the employees who had equipment of this kind at his home which he used in spare time work. As to the few things prepared for and used by a civic organization known as the "Civiceers," we think that the matter is trivial, to say the least, and that work on behalf of an organization of that kind, devoted to civic welfare and the uplift of the community, is not such a departure from the public interest as to warrant a finding of guilt of improper conduct on the part of the prosecutor.

Charge 3 originally read as follows:
"That said Harry S. Reichenstein did, on and before May 13th, 1941, without good or sufficient reason, unnecessarily cause the City of Newark to expend or incur liability for the expenditure of exorbitant sums of money for the conduct of the City Commission election of May 13th, 1941."

But was amended orally at the time of the hearing by adding the following:

"And he failed to abide by the laws of the State of New Jersey, and the ordinances of the City of Newark, with respect to advertising for bids for the purchase or sale of materials to the City of Newark or to him, with respect to the use of the central purchasing department."

Formal objection was made to the amendment, but there was no insistence upon a postponement. In any event we think there is no warrant for dismissal in this regard. On more than one occasion the office of the corporation counsel had advised the city clerk that it was not necessary for him

to take competitive bids for the purchase of the materials he is required to furnish to the election boards. We think prosecutor acted substantially in accordance with the advice of counsel and that he acted in good faith. The defendants argue that, because of an ordinance in existence requiring purchases to be made through the central purchase department, it was the duty of prosecutor to make purchases in that manner and failure to do so constituted a breach of duty warranting dismissal. We think not. The Election Law puts upon him the duty to furnish certain election supplies. The responsibility to do so is his, and he has a measure of discretion in adopting the proper course to discharge his statutory duty. The prosecutor was merely following the practice that had been followed by the city clerk's office for many years, even since the creation of the purchase department. No bad faith or improper motive is shown nor any loss to the city.

Charges 4, 5 and 6 are argued together and were as follows:
"4. That the said Harry S. Reichenstein did, without legal authority therefor, hire numerous persons for election day duty.
"5. That the said Harry S. Reichenstein did, unlawfully and without legal authority, designate a large number of persons as 'Deputy City Clerks' or 'Investigators' for election day duty, thereby, and for reasons not consonant with the duties of the office of City Clerk, clothing said persons with apparent official power which in fact did not exist.
"6. That the said Harry S. Reichenstein did, unlawfully and without legal authority, incur liability on the part of the City of Newark to the alleged 'Deputy City Clerks' or 'Investigators' for their hire, for large and unnecessary sums of money."

In pursuing the course of conduct here described, the city clerk was following the long established practice in the City of Newark. Since the first city commission election in 1917 these assistants, under one designation or another, had been appointed and used in the municipal elections. Furthermore

in acting as he did, prosecutor was following the advice of the corporation counsel to the effect that he had authority to appoint such assistants. It is not without significance that the city commissioners who now find prosecutor guilty on this charge passed a resolution authorizing the payment of compensation to these assistants, and they were paid. We find no improper motive or guilt warranting dismissal on these charges.

Charges 7, 9 and 10 are grouped and were as follows:

"7. That the said Harry S. Reichenstein did, carelessly, negligently, and in flagrant disregard of his duty to conduct an honest and efficient election employ as so-called 'Deputy City Clerks' or 'Investigators' persons unknown to him or concerning whom he made no investigation to the extent that,

"(a) Many of the said 'Deputy City Clerks' or 'Investigators' were persons of questionable or criminal reputations.

"(b) Many of said 'Deputy City Clerks' or 'Investigators' were non-residents of the City of Newark.

"(c) The places of residence, or addresses, of many of said 'Deputy City Clerks' or 'Investigators' were unknown to said Harry S. Reichenstein, who, in seeking to secure payment to said individuals, presented to the Board of Commissioners either wrong or fictitious addresses.

"8. That said Harry S. Reichenstein on the morning of election day, in violation of his duty, negligently, carelessly and in flagrant disregard of his duty to conduct an efficient honest election, was ignorant of the names, addresses, character and reputation of the persons selected by him to act as so-called 'Deputy City Clerks' or 'Investigators,' in that,

"(a) On the morning of election day, he furnished to certain City Commissioners a purported list of persons to be used as such election aides, which included the names of certain persons who were not actually to be so employed, and failed to set forth the names of a very large number of persons who were actually or later alleged by him to have been actually so employed.

"(b) Many of said election aides were persons of questionable or criminal reputations.

"(c) Many of said election aides were persons non-resident in the City of Newark.

"(d) Many of said election aides did not reside at the addresses given by the said Harry S. Reichenstein either on the list furnished as above set forth or in the list furnished and certified by him to the Newark Board of Commissioners for the payment of their hire.

"10. That the said Harry S. Reichenstein did, in violation of the statutes of the State of New Jersey in such case made and provided, and in violation of an Ordinance of the City of Newark, adopted April 27th, 1932, and in violation of a Resolution of the City of Newark, adopted May 11th, 1938, and in violation of a Resolution adopted May 27th, 1938, engage the services, on May 13th, 1941, as alleged 'Deputy City Clerks' or 'Investigators,' of many persons who were not residents of the City of Newark."

All the persons appointed represented themselves to be residents of Newark in their applications for appointment, and communications sent to them at the addresses given in the City of Newark were delivered to them and not returned. The applications were turned over to the police department for examination of records as to conviction of crime and all were approved by the police department. It is claimed that some of them were guilty of offenses other than indictable offenses and therefore disqualified for such service. The offenses in many instances were trivial police court matters. The identity of the persons in the police records as the persons who were appointed as election assistants is, in many if not most instances, very questionable. Ages and addresses vary and, despite the similarity of names, we find it difficult in many instances to believe that it is in fact the same person. We think the evidence shows that the prosecutor took reasonable precautions to investigate the persons who applied for the positions. It is not pointed out what motive he would have in appointing the particular persons complained of, if they were improper persons. No bad faith or lack of reasonable diligence in the performance of duty is shown in the evidence on these charges.

Charge 8 was:

"That said Harry S. Reichenstein did flagrantly, and in violation of his duties as City Clerk, fail and refuse, prior to election day, to furnish to certain City Commissioners a list of the election aides whom he proposed to employ."

The authority of the individual commissioners as such to make a demand of this kind of the city clerk is not pointed out, but an examination of the evidence leads us to the conclusion that the prosecutor made all reasonable effort to comply with the request and to furnish the list as soon as he could.

Charge 11 was:

"That the said Harry S. Reichenstein did, on May 13th, 1941, utterly fail and neglect properly to conduct the municipal election, in that he took no proper steps to assure the prompt return to his office of election reports from certain polling places in the City of Newark, particularly from certain polling places in the Third and Seventh Wards of said City."

We find no failure of duty on the part of the city clerk in the failure of district boards of election to make prompt returns. The reason for their failure to make prompt returns is not shown. For all that appears there might have been a valid excuse for the delay. At any rate, it is shown that the prosecutor, through the city telephone exchange and the police radio system, did attempt to hurry the returns in. There can be no reasonable complaint with his conduct in this regard.

Charge 13 was:

"That the said Harry S. Reichenstein did fail, contrary to the express mandate of Rev. Stat. 1937, Section 40:75-22, to canvass the returns from the election districts of the City of Newark on the day following the election and immediately make and file in his office the result thereof."

The final returns were filed by the city clerk on the second day after the election instead of the first day, and it is said

that the delay was occasioned by the failure to receive in properly certified form the returns of the soldier vote from the County Board of Elections. We think this explanation is sufficient to exculpate the prosecutor of the charge of a deliberate violation of duty made against him.

Under the statute, *R. S.* 40:46-7, prosecutor was entitled to hold his position during good behaviour and to be removed therefrom only for good cause shown, after a fair and impartial trial. Reviewing all the testimony, we fail to find a rational and reasonable basis for his conviction. Many trivial things were seized upon and attempted to be enlarged into matters of great moment. No improper motives or advantage to himself or disadvantage to the city or to its citizens are shown.

We conclude that the action of the city commissioners is not sustained by the evidence and must be set aside, with costs. This conclusion makes it unnecessary to pass upon the other points raised.