142 N.J. Super. 385 (1976)
361 A.2d 593
JOSEPH GOLAINE, PLAINTIFF,
v.
S. GERALD CARDINALE, MAYOR OF THE BOROUGH OF DEMAREST, PLANNING BOARD OF THE BOROUGH OF DEMAREST, MAYOR AND COUNCIL OF THE BOROUGH OF DEMAREST AND MARJORIE ZIMMERMAN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 18, 1976.
*389 Mr. Richard A. Kurland for plaintiff (Messrs. Stein and Kurland, attorneys).
Mr. John A. Schepisi for defendants (Messrs. Breslin and Schepisi, attorneys).
*390 PRESSLER, J.C.C., Temporarily Assigned.
The narrow and novel legal question presented by this action in lieu of prerogative writs arises out of a mayor's removal for cause of a Class IV (citizen-at-large) member of a municipal planning board pursuant to the provision of N.J.S.A. 40:55-1.4 which authorizes a member's removal, after hearing, for "inefficiency, neglect of duty, or malfeasance in office."
The factual basis of the controversy, largely undisputed, is made clear by the record of the removal hearing upon which this action was tried. Plaintiff Joseph Golaine a civil engineer, was duly appointed a Class IV member of the nine-member Planning Board of the Borough of Demarest in January 1972 for a six-year term expiring at the end of 1977. There is no question that through March 1974 Golaine was a valuable and diligent member of the board. By reason of his willingness to devote his professional expertise, his contribution to the work of the board was substantial, and his attendance record at both its public and executive-work sessions was near perfect. In the spring of 1974 plaintiff was assigned by his employer as the resident supervisor of an engineering project in Germany for an anticipated six-month period. Accordingly, he wrote to the planning board by letter addressed to its then chairman, advising of this situation and offering to resign, but indicating his preference to be granted a leave of absence so that he might be able to resume his board duties upon his return from Europe. The minutes of the board's next regular public meeting, held on April 10, 1974, record a motion made and apparently unanimously carried that the Board recommend to the mayor and council its adoption of an ordinance, pursuant to the 1970 amendment of N.J.S.A. 40:55-1.4, providing for appointment of two alternate board members. While not expressly so stated, the inference is clear, and it was in fact testified to at the removal hearing, that the board wished to retain plaintiff as a member, but only if his continued office-holding *391 would not result in its operation for an extended period with one less than its normal complement. Its recommendation of the "alternates" ordinance was, therefore, viewed by it as providing an ideal vehicle for accommodating both these interests. It should also be noted that the then mayor, Rosemary Sheehan, the statutory Class I member of the board, was present at that meeting and apparently concurred in that determination. The mayor and council acceded to the board's recommendation and the minutes of the board's executive session of June 6, 1974 include this notation:
Alternate Member of Board  Ordinance to be passed on June 17th. Board to recommend to Mayor and Council (copy to Environmental Commission) that Pat Rodriguez become alternate member to fill in for Joe Golaine during his absence. Discussion on second alternate pended [sic] to regular meeting. Letter to Joe confirming his leave of absence from Board.
A letter from the planning board to plaintiff, over the signature of its chairman, was in fact dispatched to plaintiff the following day so advising him, and the attendance records of the board for the balance of the year 1974 noted that plaintiff was on leave of absence.
Nothing further occurred until December 1974, some nine months after plaintiff's departure for Europe and some six months after the board's "confirmation" of his request for leave of absence, a period during which it appears one or the other of the alternates acted in his stead. Plaintiff then returned to Demarest to spend the Christmas holidays with his family, his European assignment having not yet been concluded, and he wrote again to the planning board chairman informing her that he expected not to be back permanently until the end of February 1975, in time to resume his seat for the board's March 1975 meeting. His letter further requested that his leave of absence be continued until that time. The board never formally responded to this request. On January 5, 1975 defendant, S. Gerald Cardinale, who had been elected mayor of Demarest the previous November, *392 assumed that office. Four days later he wrote to plaintiff advising him that unless he resigned by January 20, 1975 he, as mayor, would conduct a hearing on February 3, 1975 for the purpose of removing him pursuant to the statute for neglect of duty. Plaintiff, by letter written from Germany, refused to resign. A hearing was in fact held by defendant in plaintiff's absence as scheduled, and plaintiff was removed by findings dated on February 10, 1975 which noted, among other matters, that
You have been inefficient and neglectful of your duty due to continued absence from the Planning Board from approximately April 1974 through date and proposed future absence pursuant to your letter of December 26, 1974. Therefore you are removed from the Planning Board effective immediately.[1]
This action was commenced several weeks later by verified complaint and order to show cause, the parties consenting on the return date thereof to the entry of an order directing a new hearing to be held by the mayor in April 1975. In the meantime plaintiff, who did return to Demarest as scheduled, was barred from resuming his seat at the regular March 1975 board meeting. The April hearing was in due course held and plaintiff's removal in effect confirmed. The reasons for the mayor's action, as stated in his written decision, were essentially, first, that plaintiff had not been granted a valid leave of absence; second, that an inability to function in office for an 11-month period was "not a precedent in the Borough's best interest to condone," and third, that he failed to do the "right thing" under the circumstances, namely to resign. The decision concluded with the following statement of findings:
The Borough's orderly conduct of its affairs cannot proceed if proper, deliberate procedures are not practiced. The imagined insult *393 to an individual, no matter what his past service, no matter what effort he is in a position to expend, no matter what friends, highly placed in Borough government, he may call upon  cannot be allowed to prevail against the legitimate interest of the people. Mr. Golaine is removed from the Planning Board.
The sole question before the court is whether in view of the undisputed circumstances plaintiff's 11-month nonattendance constitutes a neglect of duty within the statutory intendment. The removal provision of N.J.S.A. 40:55-1.4 has not heretofore been judicially construed, nor has the research of either counsel or the court yielded judicial construction in this or in any other jurisdiction of any like statutory provision applied in like circumstances to an appointed, unpaid member of a like administrative board or body. This controversy must, therefore, be resolved in accordance with general principles of law governing forfeiture of public office and the basic considerations of public policy underlying those principles.
It is, first, clear that plaintiff was the holder of a public office rather than a public employment and that his appointment was for a term fixed by statute. See, e.g., Tibbs v. Boemi, 109 N.J. Super. 200, 205, 209 (App. Div. 1970), aff'd o.b. 55 N.J. 531 (1970); Lehrhaupt v. Flynn, 129 N.J. Super. 327, 330 (Ch. Div. 1974), aff'd 140 N.J. Super. 250 (App. Div. 1976); West Milford Tp. Planning Bd. v. West Milford Tp. Council, 123 N.J. Super. 135, 145 (Law Div. 1973); Newman v. Fair Lawn, 31 N.J. 279, 289 (1960). And see, generally, Kovalycsik v. Garfield, 58 N.J. Super. 229, 239 (App. Div. 1959). It is also clear that while the appointing authority has no inherent or common-law power to remove the holder of a public office during his term, nevertheless, and based upon the general theory that an office holder accepts his office on the implied condition of his faithful execution of its obligations, it is a well established principle that the power to remove for cause may be expressly conferred upon the appointing authority by the Legislature. Because, however, of the overriding demand of *394 public policy that officers be protected in the performance of their offices during their terms, the power to remove, once conferred, may only be exercised in strict compliance with the procedural and substantive provisions of the applicable statute. See, e.g., State, ex. rel. Police Comm'rs of Jersey City v. Pritchard, 36 N.J.L. 101 (Sup. Ct. 1873); Haight v. Love, 39 N.J.L. 14, 21-22 (Sup. Ct. 1876) aff'd 39 N.J.L. 476 (E. & A. 1877); Murphy v. Hudson Cty., Freeholders, 92 N.J.L. 244, 245-247 (E. & A. 1918); McCran v. Gaul, 95 N.J.L. 393, 400-402 (Sup. Ct. 1920); Shockley v. Hamilton Tp., 98 N.J.L. 614 (Sup. Ct. 1923); Tonkin v. Kenworthy, 112 N.J.L. 274, 279 (Sup. Ct. 1933); Pillsbury v. Monmouth Cty. Freeholders, 133 N.J. Super. 526, 531 (Law Div. 1975); Weinberger v. Hilfman, 8 N.J. Misc. 32, 148 A. 176 (Sup. Ct. 1929); Walsh v. Trenton, 117 N.J.L. 64, 70 (Sup. Ct. 1936). And see, generally, 4 McQuillin, Municipal Corporations (3 ed. 1968), § 12.229 at 214-216.
The Legislature has, in fact, liberally provided for the removal power in a proliferation of statutory enactments and in a variety of different verbiages so that there are few, if any, local appointive offices or tenured employments which are not subject to the removal power and a number of local elective ones which are. There are generally two types of statutory removal provisions. The first and more common provides only for removal for "cause" or for "good" or "just" or "sufficient" cause without attempting to specify particular categories of conduct constituting cause for removal. See, e.g., N.J.S.A. 40A:9-26 (clerk of the board of freeholders removable for good cause); N.J.S.A. 40A:9-39 (removal by county supervisor of any county official or employee for cause); N.J.S.A. 40A:9-134 (municipal clerk removable for good cause); N.J.S.A. 40A:9-144 (municipal tax collector removable for just cause); N.J.S.A. 40:55-36 (zoning board member removable for cause). See also N.J. Const. (1947), Art. V, § IV, par. 5 (any officer *395 or employee paid by the State, removable by the Governor for cause). And cf. N.J.S.A. 38-16-1 (veterans in indeterminate-term public employment removable for good cause); N.J.S.A. 40A:14-60 (exempt firemen in indeterminate-term public employment removable for good cause). The second type, such as that here involved, without use of the "good cause" terminology, undertakes to define those specific categories of conduct which constitute permissible grounds for removal. See, e.g., N.J.S.A. 55:14A-6 (commissioners of local housing authorities removable for "inefficiency or neglect of duty or misconduct in office"); N.J.S.A. 40:55C-7 (commissioners of local redevelopment agencies removable for "inefficiency or neglect of duty or misconduct in office"); N.J.S.A. 40:69A-166 (removal of any officer of employee of a municipality governed by the Faulkner Act upon conviction of an offense involving moral turpitude); N.J.S.A. 18A:12-3 (members of local boards of education removable for failure to attend three consecutive meetings without good cause). And see, N.J.S.A. 2A:81-17.2a1 (every public employee removable for failure to testify on a grant of use immunity). And cf. N.J.S.A. 40A:14-19 (municipal firemen removable for "incapacity, misconduct or disobedience of rules and regulations"); N.J.S.A. 40A:14-147 (municipal police officers removable for "incapacity, misconduct, or disobedience of rules and regulations").
The undifferentiated "cause" type of removal provision is manifestly broader and more inclusive than is the definitional type in respect of the nature of the conduct which will justify removal. That is, while each of the categories of conduct enumerated in a provision of the second type must be comprehended within the general meaning of "cause", the statement of categories is not exhaustive of all possible justifying "cause." Hence, where the second type of provision is involved, as here, two criteria must be met before the conduct in question can be deemed to constitute *396 grounds for removal. The first is whether the conduct comes within one of the specifically enumerated categories. The second is whether the conduct is such as would constitute grounds for removal under a general "cause" provision.
"Cause" in this context is a concept which, like all of the enduring principles of the common law, is certain as a matter of legal import while being at the same time extremely elastic as a matter of specific application. It means, essentially "such cause as is `plainly' sufficient under the law and sound public policy'" and has "reference to a substantial cause touching qualifications appropriate to the office or employment or to its administration." Berardi v. Rutter, 42 N.J. Super. 39, 47 (App. Div. 1956), aff'd sub nom. In re Berardi, 23 N.J. 485 (1957). It also necessarily implies such degree of misconduct or culpability on the part of the office holder as clearly implicates the public interest in precluding his continuance in that particular office. See, e.g., Lehrhaupt v. Flynn, supra, 129 N.J. Super. at 334, observing that legislation permitting removal of a fixed-term "official of elected or appointed office without fault is constitutionally defective." It is, indeed, the element of fault which conceptually distinguishes removal from office from all other causes resulting in a vacancy in office. Traditionally, historically, currently and as a matter of express legislative provision, a vacancy, except when resulting from a removal for cause, is created generally only by those nonculpable circumstances, whether self-evident or judicially determined, which directly and permanently extinguish the possibility of the officer's continuing capacity or qualification to function, such as expiration of term, death, resignation, abandonment, acceptance of an incompatible office, a declaration of insanity or removal of residence from a required geographical location. See, generally, 3 McQuillin, Municipal Corporations (3 ed. 1968), § 12.100 at 432-433. And see also, generally, Kobylarz v. Mercer, 130 N.J.L. 44 (E. & A. 1942); Gavio v. Lavallette, 10 N.J. Misc. 742, 161 A. 42 *397 (Sup. Ct. 1932); Bredin v. Rosma, 81 N.J.L. 307 (Sup. Ct. 1911); McAleer v. Jersey City Incinerator Auth., 79 N.J. Super. 142 (App. Div. 1963); Paull v. Pierce, 68 N.J. Super. 521 (Law Div. 1961).
There are certain types of culpable official conduct which are so patently inimical to the public interest and to the public trust upon which the office is predicated that they will, per se, not only justify but virtually compel removal, such as, for example, criminal misconduct in office or misconduct which proceeds from a corrupt or other improper motive. Cf. Reichenstein v. Newark, 130 N.J.L. 115, 123 (Sup. Ct. 1943); Villani v. Duffy, 114 N.J.L. 60, 66-68 (Sup. Ct. 1934). Because, however, removal for cause is a remedial proceeding, that cause and the culpability upon which it is based need not necessarily involve either commission of a crime or an improper purpose. See McCran v. Gaul, supra, 95 N.J.L. at 401-402; Finnegan v. Miller, 132 N.J.L. 192, 194-195 (Sup. Ct. 1944). Where the dereliction charged, therefore, is not of such intrinsically reprehensible character, the determination of whether a specific act or omission constitutes cause for removal requires an evaluation of the conduct in terms of its relationship to the nature of the office itself, and, in that context, an appraisal of the actual or potential impairment of the public interest which may be expected to result from the conduct in question. Thus, for example, an unexcused absence from his post by a police officer even for a short period of time may well be sufficiently consequential to constitute cause because that conduct is so fundamentally violative of his essential function and has so substantial a capacity for harm to the public. See, e.g., Wratchford v. Millburn, 6 N.J. Misc. 483, 141 A. 740 (Sup. Ct. 1928). On the other hand, a brief unexcused absence by the executive director of a local housing authority cannot but be regarded as trivial and inconsequential. See Connelly v. Jersey City Housing Auth., 63 N.J. Super. 424 (App. Div. 1960). The point, of course, *398 is that the charged dereliction, to constitute cause, must be itself an act of misfeasance or nonfeasance, and must be, further, an act which in view of the duties and obligations of the office, substantially disadvantages the public. Thus, where a removal statute, as here, speaks in terms of neglect of duty rather than in terms of cause, the neglect charged must nevertheless meet all of these tests if it is to constitute an adequate basis of removal.
It is evident that plaintiff's nonattendance here does not constitute an "actionable" neglect of duty as so defined. The leitmotif of removal cases involving nonattendance is whether the absence was either excused or excusable, either circumstance negating a finding of neglect of duty. "Excused" in this context seems clearly to imply a valid action properly taken by a person or body having the power to authorize an absence, be it the formal grant of a leave of absence or a more informal permission to be temporarily absent. See, e.g., N.J.S.A. 40A:9-7; 40A:9-157 to 160, inclusive; N.J.S.A. 40A:14-16; N.J.S.A. 40A:14-136 and 137; N.J.S.A. 11:24A-6.1. An excusable absence, on the other hand, is one without a de jure status but which is both a matter of reasonable necessity from the point of view of the officer and at the same time not unduly prejudicial to the public. Thus, whether an absence either nonexcused or nonexcusable in the de jure sense is nevertheless excusable as a practical matter depends entirely on the particular circumstances and a balancing of the reasonableness of the conduct of the officer in view of the demands of the public. See, e.g., Jamesburg v. Hubbs, 18 N.J. Super. 5 (App. Div. 1952). And see the unique stipulation of N.J.S.A. 18A:12-3 providing that a school board member who fails to attend three consecutive meetings "without good cause" may be removed by the school board. "Good cause" in that as yet unconstrued legislation clearly means, in the particular circumstances obtaining, without a "reasonable excuse" as that term is generally understood as a matter of *399 plain common sense. And cf. Tradesmens Nat. Bank and Trust Co. v. Cummings, 38 N.J. Super. 1, 5 (App. Div. 1955), defining excusable neglect in the context of what is now R. 4:50-1(a) as "the act of a reasonably prudent person under the same circumstances."
Plaintiff argues that his leave of absence was de jure and hence for that reason alone his nonattendance tautologically cannot be deemed a neglect of duty. Defendant urges, first, that the purported leave of absence was without legal authority because even if such a leave were grantable at all in the absence of express statutory authority, a proposition he regards as dubious, it would nevertheless be grantable only by the appointing authority, i.e., the mayor and not by the planning board as a body. That proposition loses much of its force, however, in view of the then mayor's membership on the planning board which purportedly granted the leave and her evident concurrence in its action. Defendant argues further that even if a six-month leave had been granted, it would, alternatively have commenced in April 1974 and hence expired the following October, or even if it did not commence until June when "confirmed," it would have expired in December, so that by January of 1975 plaintiff was clearly no longer on his originally granted and unextended leave of absence.
This court does not, however, view the leave of absence question as dispositive, particularly since plaintiff was not in fact ready to resume his duties until March 1975. The du jure status of the original leave, therefore, need not be determined. The undisputed fact that the leave had purportedly been granted is, however, a critical element in determining the reasonableness and hence the excusability of plaintiff's conduct.
At the outset, it is evident that unpaid volunteer service by members of the community who, like plaintiff, have professional skills, disinterestedness and sense of public commitment is essential to the proper functioning of a local planning board as "a quasi-judicial, independent and to some *400 extent, an autonomous board" whose work is instrumental to the shaping of the community. See McCue v. Antisell, 105 N.J. Super. 128, 145 (App. Div. 1969). Such service is a burden whose undertaking should be encouraged, at least by the insistence upon fair dealing by the community to those who have undertaken that burden. In that light, the circumstances here hardly warrant the stigma and opprobrium of a removal for neglect of duty. Plaintiff candidly explained his personal situation to his colleagues on the board, including the mayor. He left the option of his resignation to them and did not initially resign because of their decision that the community would be best served by his future resumption of his duties. Arrangements for his absence were made by the board's recommendation to the council that an ordinance be passed authorizing alternates to serve in his stead, by the council's adoption of that ordinance and by the mayor's appointment of alternates, all of which actions were taken for the exclusive purpose of accommodating plaintiff's personal needs, his ultimate return to the board, and the effective functioning of the Board in the interim.
This is not to suggest that any prolonged, continuous absence for whatever reason could not constitute grounds for removal or that the only remedy available to the community in the face of such absence would be an action seeking judicial declaration of a vacancy in office by reason of abandonment. Cf. Kobylarz v. Mercer, 130 N.J.L. 44, 47, 51 (E. & A. 1942); Gavio v. Lavallette, 10 N.J. Misc. 742, 745, 161 A. 42 (Sup. Ct. 1932); McAleer v. Jersey City Incinerator Auth., 79 N.J. Super. 142 (App. Div. 1963). This court does, however, conclude that the removal of plaintiff for neglect of duty under these circumstances, after his return and at a time when he was prepared to resume his duties, was unjustified.
For reasons which are not at all clear, the trial of this action seems to have been unduly delayed. However, more *401 than a year and a half of plaintiff's term remains. He should be restored to his office forthwith.
The final question raised is plaintiff's right to reimbursement from defendant borough of the counsel fees and other litigation expenses incurred by him in challenging his removal and seeking reinstatement. The general rule since the 1947 revision of the State Constitution has been to require each party to bear his own costs of litigation. R. 4:42-9 expressly prohibits the allowing of counsel fees except in the situations therein enumerated. Despite periodic suggestion that the counsel fee rule be comprehensively revised and that consideration be given to permitting an award of counsel fees by the court in additional situations, the abuses of the pre-1947 Chancery practice which motivated the adoption of the original source rule from which the present rule is derived is apparently a matter of sufficiently recent memory to impel against any casual or wholesale liberalization of the power of the courts as presently stated. See generally, Gerhardt v. Continental Ins. Cos., 48 N.J. 291 (1966); Red Devil Tools v. Tip Top Brush Co., Inc., 50 N.J. 563 (1967); Cohen v. Fair Lawn Dairies, Inc., 86 N.J. Super. 206 (App. Div. 1965), aff'd 44 N.J. 450 (1965); Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162 (1960). The rule, by amendment effective April 1, 1975, expressly authorizes an allowance of counsel fees where permitted by statute. See R. 4:42-9(a)(8). The rule also does not preclude an allowance of counsel fees where the incurring thereof is a traditional element of damages in the particular cause of action. See Gerhardt v. Continental Ins. Cos., supra.
Plaintiff relies, first, on N.J.S.A. 40A:9-172 which is taken almost verbatim from N.J.S.A. 40:46-34, the latter statute also constituting the practically verbatim source of N.J.S.A. 40A:14-151, applicable to members of a local police department. N.J.S.A. 40A:9-172 provides in part that any municipal officer whose dismissal from office shall *402 be judicially determined to be illegal "shall be entitled to recover his salary from the date of such * * * dismissal, provided a written application * * * shall be filed with the municipal clerk within 30 days after such judicial determination." Insofar as this court has been able to determine, and counsel do not suggest to the contrary, neither the present statute nor the source provision has ever been construed to include the expenses of litigation where an officer, successful in challenging his suspension or removal, is awarded salary for the period thereof. The statutes which govern noncivil service municipal employees and municipal policemen must be contrasted with the analogous civil service provision, N.J.S.A. 11:15-6, which, in lieu of authorizing payment of "salary" for the period in question, authorizes the Commissioner to award the employee "compensation". This difference in language has been interpreted as indicating a legislative intent that civil service employees be made whole in the common law sense and that, therefore, the back pay award is subject to mitigation in the amount of other income earned by the employee during the suspension period. See Mason v. Civil Service Comm'n, 51 N.J. 115, 129-130 (1968). See also, N.J.S.A. 18A:6-30, also using the word "compensation" in lieu of salary and similarly construed in respect of mitigation. See, e.g., Mullen v. Jefferson Tp. Bd. of Ed., 81 N.J. Super. 151 (App. Div. 1963)
As a corollary of the mitigation principle, which is based on the employee being made whole, he is permitted an award of his litigation expenses, but only as a credit against the amount found in mitigation which is deducted from the full salary he otherwise would have earned. Noncivil service municipal employees to whom N.J.S.A. 40A:9-172 applies and whose award of back pay has been held not subject to mitigation by reason of the statutory use of the word "salary" rather than "compensation" have not been permitted to recover litigation expenses. Nor have civil service employees whose back pay award is not in fact mitigated *403 been allowed counsel fees. That is the precise holding of Perrella v. Jersey City Bd. of Ed., 51 N.J. 323 (1968), where the Supreme Court observed that:
It was not our intention to put such employees in a better position than an ordinary litigant who makes a full recovery of damages in simple breach of contract cases; nor did we intend to depart from the view that "sound judicial administration will best be advanced by having each litigant bear his own counsel fee except in those few situations specially designated in R.R. 4:55-7." Gerhardt v. Continental Ins. Co. [supra]. Therefore, when a tenure-holding public employee is improperly discharged and is awarded back wages in full without mitigation, either by the Civil Service Commission or by a court, neither Mastrobatista nor Mason provides any justification for adding a counsel fee to such full recovery. [at 344]
If N.J.S.A. 40A:9-172 has been construed as not authorizing an award of counsel fees to a salaried employee who has been illegally suspended or removed, it does not appear to this court that it should be construed as authorizing such an award to a nonsalaried officer who successfully challenges his removal. The Legislature is presumed to be aware of judicial construction of its enactments and, more particularly, of the foregoing decisional law permitting expenses of litigation only as a credit against mitigation. See Brewer v. Porch, 53 N.J. 168, 174 (1969). Had the Legislature intended to deviate from this judicial construction or to enlarge the remedy upon reinstatement available to either salaried or unsalaried municipal officials, it could have done so. That it did not intend that consequence is further suggested by the provision of N.J.S.A. 40A:14-155, which expressly provides for reimbursement to a police officer of the expense of a successful defense of a disciplinary or criminal proceeding. There is no cognate provision in Title 40A, chapter 9, applicable to other noncivil service municipal officials and employees. It should be further pointed out that N.J.S.A. 40A:14-155 has been strictly construed so as to deny legal fees to a municipal police officer validly promoted by the governing body but barred from assuming his new *404 position by an order of the mayor, who regarded himself as having the exclusive power to promote. Despite the fact that the officer was awarded a pay differential for the period during which the mayor's order, held to be ultra vires, was in effect, his legal costs in the litigation resulting in that holding were held to be non-recoverable. See Boro. of Highlands v. Davis, 124 N.J. Super. 217 (Law Div. 1973).
Plaintiff further argues that he is entitled to reimbursement as a matter of a common law right to indemnification. While it is true that counsel fees had been allowed to municipal officials under the prior practice, they were, in fact, allowed only where the officer required legal defense to justify an action taken in his official capacity and in the performance of his official duties. See, e.g., Barnert v. Paterson, 48 N.J.L. 395 (Sup. Ct. 1886); State, Bradley, pros., v. Hammonton Council, 38 N.J.L. 430 (Sup. Ct. 1876). Indemnification in that situation is indeed a general principle of municipal law. See 3 McQuillin Municipal Corporations (3 ed. 1968), § 12.137 at 575-577. The facts here, however, patently do not meet the three necessary preconditions for such indemnification, namely, that the officer was acting in a matter in which the municipality has an interest, that he was acting in the discharge of a duty imposed or authorized by law, and that he was acting in good faith. See McQuillin, op cit.
This court, finding neither a rule nor a statute specifically authorizing an allowance of a counsel fee and other litigation expenses in the circumstances here, and finding no common-law theory upon which such an allowance can be based, has no alternative but to reject the contention.
NOTES
[1] The mayor's appointment of a replacement to fill plaintiff's unexpired term was expressly made subject to the ultimate disposition of this action.